**Julius W. HOBSON, Individually and on behalf of Jean Marie Hobson and Julius W. Hobson, Jr., et al., Plaintiffs,**

**v.**

**Carl F. HANSEN, Superintendent of Schools of the District of Columbia, the Board of Education of the District of Columbia, et al., Defendants.**

**Civ. A. No. 82-66.**

United States District Court
District of Columbia.

Feb. 19, 1968.

William M. Kunstler, New York City, and Jerry D. Anker, Washington, D. C., for plaintiffs.

F. Joseph Donohue, Thomas S. Jackson, Edmund D. Campbell and John L. Laskey, Washington, D. C., for petitioners for intervention.

J. SKELLY WRIGHT, Circuit Judge*:

On June 19, 1967, this court held that in various respects the District of Columbia school system denied Negro and poor children their constitutional right to equal educational opportunity, and entered a decree in accordance with that judgment. Hobson v. Hansen, D. D.C., 269 F.Supp. 401 (1967). Thereafter the defendant Board of Education, on July 1, voted six-to-two not to appeal, and by a vote of seven-to-two ordered Dr. Carl Hansen, in his then capacity of Superintendent of Schools, not to appeal; Dr. Hansen subsequently resigned effective July 31. Since July 1 the Board of Education has been actively pursuing a course of action designed to implement the court's decree, and on January 2, 1968, filed its preliminary report of compliance.

On July 17 Dr. Hansen, as Superintendent, and Mr. Carl Smuck, one of the two dissenting members of the Board, filed notices of appeal, and on the same day attorneys representing Dr. Hansen filed

---

* Sitting by designation pursuant to 28 U.S.C. § 291(c).

a motion under Rule 24, Federal Rules of Civil Procedure, to intervene as a party for purposes of taking an appeal from this court's decision. This was followed on July 19 by two other motions to intervene, one on behalf of 20 parents (or 12 families) whose children are enrolled in the District schools, and one on behalf of Mr. Lawrence A. Wilkinson, as a teacher in the District school system and as a parent of four children enrolled in a private parochial elementary school. Coupled with these motions to intervene were notices of appeal. Comparable motions to intervene for purposes of taking an appeal were also filed directly in the Court of Appeals itself. Mr. Wilkinson's motion has since been withdrawn and he no longer seeks to participate in this case. Plaintiff Hobson moved the court to dismiss the appeals and opposed the various motions to intervene.

■ A timely direct appeal having been filed by Dr. Hansen and Mr. Smuck, jurisdiction over the case passed to the Court of Appeals. Consequently, this court was without jurisdiction to pass on these motions until the Court of Appeals acted. United States v. Radice, 2 Cir., 40 F.2d 445 (1930); see Distinti v. Cunningham, 106 U.S.App.D.C. 299, 272 F.2d 528 (1959); American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., S.D.N.Y., 3 F.R.D. 162 (1942). Accord: Bromschwig v. Carthage Marble & White Lime Co., 334 Mo. 830, 68 S.W.2d 320 (1933); City of St. Louis v. Silk, 239 Mo.App. 757, 199 S.W.2d 23 (1947). See also 3A W. Barron & A. Holtzoff, Federal Practice and Procedure § 1558 (Wright ed. 1958); 7 J. Moore, Federal Practice ¶ 73.13 (2d ed. 1966).

On December 18, 1967, the Court of Appeals decided to hold Dr. Hansen's and Mr. Smuck's direct appeals in abeyance and remanded the motions to intervene for a hearing in this court. At the ensuing hearing on January 23, 1968, the attorneys for the intervenors renewed their motions to intervene and also moved for the first time for a stay of this court's decision pending appeal. This court denies the stay and grants the motions to intervene.

*Stay.*

■ In Hobson v. Hansen, D.C., 269 F.Supp. 401, this court found that Negro and poor children of the District of Columbia school system were being denied their constitutional right to equal educational opportunity. It ordered the school board to act to remedy the situation. Though Dr. Hansen, in his capacity as Superintendent of Schools, and Mr. Smuck, in his capacity as a school board member, were named as party-defendants, neither was an indispensable party and the suit could have been brought against the school board itself as a governmental entity. Nothing in this court's decree implementing its decision runs against Mr. Smuck individually or against Dr. Hansen now that he has resigned his position as Superintendent. The school board, on the other hand, against whom the decree does run, has voted not to appeal it, has not requested a stay, and is voluntarily trying to comply with it. There is no reason, therefore, to grant a stay on the motion of Dr. Hansen.

The 20 parents of an unknown number of children also request a stay pending appeal. The parents are suing in behalf of their own children and do not seek to raise the rights of others. There is no suggestion that these parents are members of a class of any kind. They do not allege how the decree affects them or what legitimate interests of theirs would be protected by a stay.

■ The grant of a stay is discretionary with the court. Rule 62, Fed.R.Civ.P. Here this court has found that thousands of schoolchildren are being denied their constitutional rights. A stay would perpetuate this continuing and essentially irreparable injury. The school board, the party charged by statute with operating the District schools and the only party bound by the decree, does not take excep-

tion to it. On the other side we have the parents of a handful of students, perhaps 10 or 15 out of a school population of 149,000, who for unspecified reasons "dissent from" the decree and who have not even alleged how they are affected by it. This court has no hesitation in denying the motions for a stay pending appeal.

*Intervention.*

█ █ Petitioner Hansen and a group of 20 parents seek to intervene as a matter of right pursuant to Rule 24(a), Fed. R.Civ.P. That rule, in relevant part, provides:

> "Intervention of right. Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

To intervene, then, petitioners must establish, first, that they have an interest in the proceeding, second, that they are "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect" it, and, third, that their interest is not being adequately represented by existing parties.[1] And in seeking to intervene after final judgment, petitioners must meet an especially heavy burden. For though the rule does not in terms distinguish between intervention before and after final judgment, post-judgment motions are rare and at this stage of the proceedings Rule 24 should generally be applied less liberally.

█ This is so because the rule is couched in terms of "timely application,"

which makes it appropriate to take into account the stage of the proceedings. The Revisers have included the following caveat in their Notes: "An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." See Notes of Advisory Committee on Rules, Rule 24, 28 U.S.C.A. (1967 Pocket Part). More importantly, courts have in the past recognized the need for a particularly careful screening of post-judgment motions. See United States v. Blue Chip Stamp Co., C.D.Calif., 272 F.Supp. 432 and cases cited therein at 436–437 (1967); 2 W. Barron & A. Holtzoff, Federal Practice and Procedure § 594 (Wright ed. 1961) ("Intervention may be allowed after a final judgment or decree if it is necessary to preserve some right which cannot otherwise be protected, but such intervention will not be permitted unless a strong showing is made."); see also 4 J. Moore, Federal Practice ¶ 24.13 (2d ed. 1967). But before discussing whether petitioners have successfully made such a showing, a brief general discussion of Rule 24 and some of the cases decided under it is in order.

Few cases have focused on the kind of interest required by Rule 24. Before the rule was revised in 1966, it contained two subdivisions requiring that the petitioner either be legally "bound by a judgment" or "so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof." Rule 24(a) (2) and (3), 28 U.S.C.A. (1958). Typically, the question of interest was subsumed in the questions of whether the petitioner would be bound or of what was the nature of his property interest.[2] The

---

1. See generally Shapiro, Some Thoughts on Intervention before Courts, Agencies and Arbitrators, 81 Harv.L.Rev. 721 (1968), for a current, thoughtful discussion of intervention.

2. "While the subdivision refers to the applicant's 'interest', decision on the right to intervene should not turn on whether or not the applicant has an 'interest' in the subject matter of the controversy, but

touchstones were the familiar concepts of *res judicata* or traditional property rights. Now, however, we are to analyze the petitioner's position in terms of whether as a "practical matter" the disposition of the action will adversely affect his ability to protect his interest. Obviously, before any practical judgment can be made we must know what the interest is; thus one effect of the new rule is to focus attention directly on the concept of "interest."

The pre-1966 cases that tried to define the kind of interest required state that the interest must be " 'a legal interest as distinguished from interests of a general and indefinite character which do not give rise to definite legal rights'." Brotherhood of Ry. & S. S. Clerks v. Atlantic Coast Line R. Co., D. N.C., 88 F. Supp. 115, 119, affirmed, sub nom. Rose v. Brotherhood of Railway & Steamship Clerks, 4 Cir., 181 F.2d 944, cert. denied, 340 U.S. 851, 71 S.Ct. 78, 95 L.Ed. 623 (1950). See Reynolds v. Marlene Industries Corp., S.D.N.Y., 250 F.Supp. 722 (1966). And more specifically, " 'interest' * * * means a specific legal or equitable interest in the chose," Toles v. United States, 10 Cir., 371 F.2d 784, 786 (1967); "[t]he primary essential element that must exist * * * is that [petitioner] have a direct personal or pecuniary interest in the subject of the litigation," Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 7 Cir., 315 F.2d 564, 566, cert. denied, sub nom. Illinois v. Commonwealth Edison Co., 375 U.S. 834, 84 S.Ct. 64, 11 L.Ed.2d 64 (1963); "[a] party seeking to intervene * * * must have some substantial legal interest

*to protect by his intervention,"* Greene v. Verven, D.Conn., 203 F.Supp. 607, 610 (1962).

*Effect of the 1966 revision.* Rule 24 was amended as of July 1966 to overcome objections that conceptual difficulties with the principles of *res judicata* and property rights had made the rule unduly restrictive. See Notes of Advisory Committee on Rules, Rule 24(a), 28 U.S.C.A. (1967 Pocket Part); Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 153–154, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967) (Mr. Justice Stewart, dissenting); Cohn, The New Federal Rules of Procedure, 54 Geo.L.J. 1198, 1229–1232 (1966). But how far the revisions go toward expanding the scope of Rule 24(a) is unclear.

The Notes to the new rule indicate that the petitioner's interest should be clearly related (directly or indirectly) to the subject matter of the action, and suggest that that interest be a substantial one. The Revisers say: "If an absentee would be *substantially affected* in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene * * *. Intervention of right is here seen to be a kind of counterpart to Rule 19(a) (2) (i)[3] * * *: where, upon motion of a party in an action, an absentee *should be joined* so that he may protect his interest * * * he ought to have a *right* to intervene in the action on his own motion." (Emphasis added.)

The rule also ties in to Rule 23 dealing with class actions. However, as the Notes indicate, a class action presupposes a judgment that will extend by its

on the less hazy question: is there a possibility that applicant will be bound by the judgment?" 4 J. Moore, Federal Practice ¶ 24.08 at 37; ¶ 24.09 (2d ed. 1967). See Shapiro, *supra* Note 1, at 729–740.

3. Rule 19(a) (2) (i), Fed.R.Civ.P., in pertinent part reads:
 "Rule 19. Joinder of Persons Needed for Just Adjudication
 "(a) Persons to be Joined if Feasible. A person who is subject to service

of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if * * * (2) he claims an interest relating to the subject of the action and is so situated that disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest * * *."

terms to the petitioner—i. e., one that operates directly on the petitioner. The rule has been amended to make intervention easier at the trial stage, whereas before the change a petitioner often had a problem of predicting how his rights would be hurt. Thus he would be met with the *cul-de-sac* that if representation of his interest proved inadequate, then he would not be *bound* by the judgment; and of course if he could not establish inadequate representation, then by the terms of the rule he could not intervene. But while one's interest need no longer be decisively affected before intervention will be allowed, there is nothing in the new rule or in its attendant commentary to indicate that it effected a change in the kind of interest required.[4] Thus the thrust of the revision seems clearly to be concerned with adequacy of representation and not with any notion of expanding the *types* of interests that will satisfy the rule. Still required for intervention is a direct, substantial, legally protectable interest in the proceedings.

The only post-amendment case that touches on the interest question directly is Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967). And there Mr. Justice Douglas did not amplify the majority's views on the matter so as to provide clear guidelines. The position of Cascade, the prospective intervenor, is described at page 133, and amounts to

this: Cascade is an Oregon distributor of gas and has been and will be relying as its sole supplier on the Pacific Northwest Company that El Paso acquired and is now having to re-create via divestiture; that is Cascade's "interest." Mr. Justice Douglas also details Cascade's complaint: that the new company is being placed at such a competitive disadvantage by the proposed settlement that the company's economic viability is questionable; and presumably to the extent that company fares poorly, Cascade's own economic fortunes will be adversely affected. Mr. Justice Douglas notes that the new rule "recognizes as a proper element in intervention 'an interest' in the 'transaction which is the subject of the action.' * * * [W]e conclude that the new Rule 24(a) (2) is broad enough to include Cascade * * *." 386 U.S. at 135–136, 87 S.Ct. at 937.

The opinion is certainly susceptible of a very broad reading, and Mr. Justice Stewart, in dissent, reads it broadly indeed:

"The Court's standard of 'adequate representation' comes down to this: If, after the existing parties have settled a case or pursued litigation to the end, some volunteer comes along who disagrees with the parties' assessment of the issues or the way they have pursued their respective interests, intervention must be granted to that volunteer as of right. This strange stand-

---

4. The Revisers explain the import of the change in this way:

"* * * A class member who claims that his 'representative' does not adequately represent him, and is able to establish that proposition with sufficient probability, should not be put to the risk of having a judgment entered in the action which by its terms extends to him, and be obliged to test the validity of the judgment as applied to his interest by a later collateral attack. Rather he should, as a general rule, be entitled to intervene in the action.

"The amendment provides that an applicant is entitled to intervene in an action when his position is comparable

to that of a person under Rule 19(a) (2) (i), as amended, unless his interest is already adequately represented in the action by existing parties. The Rule 19(a) (2) (i) criterion imports practical considerations, and the deletion of the 'bound' language similarly frees the rule from undue preoccupation with strict considerations of res judicata." Notes of Advisory Committee on Rules, Rule 24, 28 U.S.C.A. (1967 Pocket Part).

And see Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356, 400–407 (1967).

ard is not only unprecedented and unwise, it is also unworkable." 386 U.S. at 155, 87 S.Ct. at 947.

But *Cascade* should not be read as a *carte blanche* for intervention by anyone at any time.[5] For though Cascade's interest in the decree may have been somewhat remote, it did show a strong, direct economic interest, for the new company would be its sole supplier. In addition, the majority opinion reflects its irritation with the Justice Department for "knuckl[ing] under" to El Paso and with the District Court judge for ignoring the Court's mandate. It is, then, little wonder that the Court was extremely charitable with the intervenors.

### 1. *Petitioners' Interests.*

 a. *Parents.* Rule 24(c) requires that the motion asking for intervention "shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Petitioners have not filed a separate pleading, a failure that has been held fatally defective.[6] And even apart from Rule 24(c), petitioners have an obligation to set forth their interest with clarity, for "motions to intervene should be carefully scrutinized and granted only in cases * * * in which the motion definitely establishes that the petitioner has some interest or right which will not be adequately protected or enforced unless intervention is granted." Societe Internationale, etc. v. McGrath, D. D.C., 90 F.Supp. 1011, 1012 (1950), affirmed, sub nom. Kaufman v. Societe Internationale, 88 U.S.App.D.C. 296, 188 F.2d 1017 (1951), reversed on other grounds, 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853 (1952). Where petitioners seek to intervene after final judgment, specificity may be particularly important. For even if petitioners have a protectable interest in certain aspects of the decision, they may not have standing to challenge the whole of it on appeal. Specificity is required so the court can determine in which parts of its decree the petitioners have such an interest.

Yet neither in their moving papers nor at the three hearings which have been held have the parents alleged how they or their children are affected by this court's decree in *Hobson.* Nor have they offered any evidence of any kind to demonstrate their interest. They have simply reiterated their position that they are parents of public schoolchildren, that they "dissent from" this court's decision, and that their children will be materially affected by its implementation. The only information concerning the parents that has been conveyed to this court is their names and addresses and the fact that some are Negro.[7] From this the court

---

5. A few months after *Cascade,* the Court dismissed *per curiam* an appeal from denial of intervention in a case involving an antitrust consent decree. Lupton Mfg. Co. v. United States, 388 U.S. 457, 87 S.Ct. 2112, 18 L.Ed.2d 1318 (1967), dismissing appeal from United States v. Aluminum Co. of America, E.D.Mo., 41 F.R.D. 342 (1967); cf. United States v. Blue Chip Stamp Co., C.D.Calif., 272 F. Supp. 432 (1967).

6. Miami County Nat. Bank of Paola, Kan. v. Bancroft, 10 Cir., 121 F.2d 921, 926 (1941) (alternative holding) ("The purpose of the rule requiring the motion to state the reasons therefor and accompanying the motion with a pleading setting forth the claim or defense is to enable the court to determine whether the applicant has the right to intervene, and,

if not, whether permissive intervention should be granted"); Mullins v. De Soto Securities Co., W.D.La., 2 F.R.D. 502, 507 (1942) (alternative holding); Le-Brecht v. O'Hagan, 96 Ariz. 288, 394 P.2d 216 (1964) (construing state statute identical with Rule 24(c) on post-judgment motion to intervene in quiet title action).

7. A sense of the inadequacy of the parent-petitioners' allegations can be derived from an examination of their proposed findings of fact and conclusions of law here quoted in full:

"FINDINGS OF FACT

* * * * *

"7. The following proposed intervenors are residents of the District of Columbia as hereinafter set forth and

could determine in what school districts they reside, but not which schools their children attend since the court is not even told whether they are in elementary, junior high or high school. Even if they are affected by parts of the decree and could conceivably intervene to challenge those parts on appeal, they may not have an interest in every aspect of it.

 The parents seem to rely on the fact that, because Hobson himself had standing as a parent to bring suit against the school board, they, as parents, should be allowed to intervene to carry the suit

are the parents of children attending the public schools of the District of Columbia.

"(a) Reverend William D. Jackson, residing at 44 58th Street, S.E.

"(b) Margaret G. Carter, residing at 4630 B Street, S.E.

"(c) Katherine McKay Wilkinson, residing at 4308 Forest Lane, N.W.

"(d) Charles Tait Trussell, residing at 4414 Klingle Street, N.W.

"(e) Ernest R. Stevens, residing at 1302 F Street, N.W.

"(f) Robert E. Nelson and Barbara A. Nelson, residing at 1751 Lanier Place, N.W.

"(g) Van H. Seagraves and Eleanor Seagraves, residing at 1813 Shepherd Street, N.W.

"(h) John R. Immer and Marjory J. Immer, residing at 1638 19th Street, N.W.

"(i) William E. Weld, Jr., and Jane Weld, residing at 3911 Argyle Terrace, N.W.

"(j) Richard A. Hendricks and Dawn C. Hendricks, residing at 3833 Windom Place, N.W.

"(k) Reverend and Mrs. Cleveland B. Sparrow, residing at 843 52nd Street, N.E.

"Certain of the aforementioned intervening parents are Negro citizens and others are white citizens.

"8. The education of all children attending the public schools of the District of Columbia is or may be affected by the judgment of this Court entered on June 19, 1967, and this is a proper and legal concern of their parents, including the proposed intervening parents. Said proposed intervening par-

forward on appeal on behalf of the school board which has chosen not to do so. But in the first place, intervention is concerned with something more than standing to sue: it is concerned with protecting an interest which practically speaking can only be protected through intervention in the current proceeding. That petitioners share a common or identical interest with those who have standing to sue does not answer the question or entitle them to intervene.

Even more important, Hobson's suit was a class action brought in behalf of

ents dissent from and desire appellate review of that judgment.

"9. The * * * proposed intervening parents have an interest in the properties and transactions which are the subject matter of this action. Prior to the judgment of this Court entered on June 19, 1967, the interests of the interveners in said properties and transactions were adequately represented and protected by the defendant, Board of Education; but since said judgment and the announced decision of the Board of Education not to appeal or permit the Superintendent of Schools to appeal therefrom, the interests of the interveners have not been adequately represented by existing parties; and the future disposition of this action, in the absence of an appeal (which no existing parties have noted) would as a practical matter impair or impede the interveners' ability to protect their aforementioned interests.

"CONCLUSIONS OF LAW

"1. The right of the proposed interveners to enter this case for the purpose of appeal must be determined as of the time their motions to intervene were filed. At that time no action had been taken to implement the judgment entered by this Court, and any specific effect upon children of the intervening parents and others was wholly prospective; but the future implementation of said judgment could have a material effect upon the children of the intervening parents and other children similarly situated.

"2. The proposed * * * intervening parents are entitled as a matter of right to intervene in this action pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, for the purpose of taking an appeal."

Negro and poor children and *alleging an unconstitutional denial of equal educational opportunities.* Here, however, the petitioners seeking to intervene do not purport to represent a class [8] and *have not alleged a denial of any rights, constitutional or otherwise.* Again, they simply "dissent from" this court's decision and disagree with the school board's decision not to appeal it.

### b. *Dr. Hansen.*

Petitioners' attorneys were evidently aware of the Rule 24 requirement that the prospective intervenors' interests be delineated with some specificity, for in Dr. Hansen's motion they spell out in detail how he is affected by the *Hobson* decision and what interests he seeks to protect through appeal.

First Dr. Hansen maintains that the court's judgment and opinion amounted to a personal attack on him, damaging his professional reputation as an educator and school administrator, and that he has a right to intervene to salvage that reputation.

The court emphatically rejects the idea that the opinion and judgment of June 19 amounted to a personal attack on Dr. Hansen. This lawsuit has been and always will be concerned with the *public school system* and not with any particular individuals within it. Dr. Hansen was Superintendent; he was a party in that capacity; he was a principal witness in that capacity; and he was cited by the court in that capacity. Nowhere does Dr. Hansen's motion before this court point to any aspect of the opinion to support the allegation of a personal attack. In fact, Dr. Hansen, being an employee of

the Board and subject to its order, need not have been named in the suit at all.

The sole case relied upon by Dr. Hansen, Blassie v. Kroger Company, 8 Cir., 345 F.2d 58 (1965), is readily distinguishable. There a union trustee had been sued as trustee; during the course of the trial he was removed from office by the union, but he continued to participate actively in the litigation. He was found to have an appealable interest,[9] not simply because of his participation as an individual, but because the judgment and decree operated against him in his *individual* capacity; that is, he was individually named in the decree and was directed to perform positive acts; failure to comply would have subjected him, individually, to citation for contempt of court; and he was, individually, taxed for costs of the trial. Most certainly this is not Dr. Hansen's position. While named in the judgment, as Superintendent, he is not individually subject to the decree; now that he has resigned as Superintendent, he is automatically out of the proceedings. Rule 25(d) (1), Fed. R.Civ.P. The decree has no effect on him whatever—it was rendered against the office, not the man.

Apart from his personal reputation, Dr. Hansen alleges interests related to his status as a resident, citizen and taxpayer in the District of Columbia and as a professional educator and school administrator. (1) As a resident and taxpayer he alleges an interest in the public expense—amount unspecified—involved in compliance with the judgment. (2) As a citizen, resident and taxpayer he says he is vitally concerned with the administration of the school system by the Board of Education; that he does not think the

---

8. While in their proposed findings of fact and conclusions of law petitioners do refer to others "similarly situated," they have neither explained how they themselves are situated nor in their moving papers sought to establish the prerequisites of a class action.

9. Though the case was predicated on Rule 74, Fed.R.Civ.P., rather than on Rule 24,

the question being whether petitioner had an appealable interest, the relevant considerations under the two rules often coalesce, and the sort of interest giving rise to a right to intervene for purposes of taking an appeal may be much like that required to take an appeal directly.

judgment, which he believes to be an unlawful judicial invasion into the administration of schools and the formulation of educational policies, should become precedent here or elsewhere; and that the Board's acceptance of the judgment is an abdication of its legal responsibilities. (3) Finally, as a professional educator and administrator he says he has a direct interest in the welfare of all students, their parents and their teachers; that those interests will be adversely affected by the erroneous judgment of this court; and that the judgment will have the effect of driving the races apart by compelling policies based on considerations of race and affluence.

As a taxpayer, Dr. Hansen is just like any other taxpayer in the District of Coumbia—ex-Superintendent or not—and as such faces all the obstacles confronting a taxpayer seeking to bring such a suit. See Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923); Jaffe, Standing to Secure Judicial Review: Public Actions, 74 Harv.L.Rev. 1265 (1961). And here the question is not simply one of standing, but one of the right to intervene, where the interest must be more refined, more direct and more substantial. In Blocker v. Board of Education of Manhasset, New York, E.D.N.Y., 229 F.Supp. 714 (1964), the parents of several schoolchildren sought, *as taxpayers*, to intervene for purposes of appealing a decision ordering the school board to desegregate certain schools through a freedom of choice plan. The school board, which had originally fought the suit, decided not to appeal. The case was decided before the change in Rule 24, and Judge Zavatt's decision denying intervention turned in part on the fact that the parents would not be bound by the decision. But the decision also rested on the fact that the effect of the decision on the prospective intervenors' taxes was purely speculative. Here there is no showing that Dr. Hansen's taxes will be increased because of implementation of this court's decree or,

if they will be increased, what portion or portions of the decree will be responsible for it. Additionally, it is not clear that his interest as a taxpayer could not be protected in other ways, e. g., through an injunctive action against the Board to restrain certain expenditures as unlawful. Finally, and most important, Dr. Hansen does not allege any unlawful conduct by the school board which he, as a taxpayer, seeks to restrain by appealing. Thus the matter is simply one of disagreement over policies, and suits do not lie simply to carry such a disagreement into court, whether in a direct action or through intervention. Indeed, even if Dr. Hansen were affected more directly than he is as a taxpayer, a suit based simply on disagreement with school board policy would not state a justiciable claim.

Finally, as to Dr. Hansen's interest in administration of the school system and in the welfare of the students in it, his interest is no different from any other resident. Again, he does not allege that under the decree the school board will be acting unlawfully, but only that it will be acting unwisely. This is not normally the sort of complaint that can give rise to a lawsuit. A citizenry displeased with its leaders' policies must generally seek redress through the political, not the judicial, process. Here, however, Dr. Hansen can argue that, even if this school board acquiesces in this court's judgment, unless the judgment is appealed subsequent boards, which may disagree with it, will nevertheless be bound by it. But political judgments, even though irremediable, nevertheless cannot be challenged in court unless someone's legally protectable rights are infringed. Here Dr. Hansen alleges no such right and the question becomes whether the school board, in deciding not to appeal, is in good faith representing the interests it has been delegated the responsibility to protect. There is no allegation that it is not. Congress has vested "[t]he control of the public schools of the District of Columbia * * *" in the school board.

31 D.C.Code § 101 (1967). That board has determined that the interests of the school system will best be served, not by appealing, but by implementing the decree. This decision was reached in open meeting, and petitioners do not argue that it was made in bad faith or in violation of their legal responsibilities. Indeed, the good faith of the Board is conceded. There is said to be inadequate representation only because the Board has decided not to appeal. Thus what the issue boils down to, in petitioners' own terms, is whether they should be allowed to appeal because in their judgment an appeal is warranted.

But the interest which must be established under Rule 24 is not—as petition-

ers sometimes seem to suggest it is— whether petitioners have a constitutional right to appeal. The assertion that they do have such a right is without substance in law or logic, for the very question is whether they have an interest which indeed does entitle them to appeal. To say that they come into this court with the pre-existing right, for which intervention must be granted as a sort of procedural pathway to the Court of Appeals, totally begs the question. And, as we have seen, the parent petitioners have not shown what their interests are, while Dr. Hansen's interests do not seem sufficient to establish a right to intervene, nor are they of the sort protectable by the judiciary.[10]

---

10. As indicated, intervention after final judgment has been rare, and the major cases allowing it are distinguishable as to the interests which the intervenors sought to protect by appealing.

In Wolpe v. Poretsky, 79 U.S.App.D.C. 141, 144 F.2d 505, cert. denied 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621 (1944), for instance, the question was whether neighboring property owners could intervene to appeal the District Court's ruling that the Zoning Commission of the District of Columbia had acted arbitrarily and capriciously in prohibiting the building of an apartment house in a residential area; the Commission decided not to appeal, and the property owners were confronted with the prospect of having an apartment house raised in their midst. But there the petitioners' interest was established by statute: 5 D.C.Code § 422 (1967) gives neighboring property owners a private right of action to enjoin building and construction that violates the zoning laws. "The interest of individual property owners in protecting the 'stability of districts and of land values therein' is expressly recognized by Section 5–422 of the Code. * * * Their right to bring that independent action is the basis of appellants' right to intervene in this case." 79 U.S.App.D.C. at 143, 144 F.2d at 507.

In Pellegrino v. Nesbit, 9 Cir., 203 F.2d 463, 37 A.L.R.2d 1296 (1953), petitioner was a stockholder seeking to intervene to appeal an action brought under § 16(b) of the Securities Exchange Act to recover profits made by the corporation's officers through allegedly unlaw-

ful insider (short-swing) dealings. The District Court had found in favor of the officers and the corporation had decided not to appeal. Though there is some broad dictum, the decision was narrowly framed, being based as much on § 16(b) as on Rule 24. "Section 16(b) establishes a statutory policy intended to prevent the abusive practices which were found to result from short-swing insider trading of securities, practices which are harmful both to the other stockholders and to the general public. * * * To the extent the statute is intended to protect the public from market fluctuations intentionally caused by or within the prior knowledge of corporate insiders seeking short-swing profits, the plaintiff in a § 16(b) suit is merely an instrument for effectuating the statutory policy. * * * *In view of the statutory policy involved we need not be concerned with either the substantiality of appellant's shareholder interest * * * or* appellant's motive in seeking to take part in the litigation." 203 F.2d at 466. (Emphasis added.) And see Alleghany Corporation v. Kirby, 2 Cir., 344 F.2d 571 (1965), cert. dismissed as improvidently granted, 384 U.S. 28, 86 S.Ct. 1250, 16 L.Ed.2d 335 (1966), discussed in text infra. Here, of course, petitioners have no comparable statutory rights.

In American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., S.D.N.Y., 3 F.R.D. 162 (1942), the court did not focus directly on the question of interest, but the interest was obvious. Petitioners were bondholders objecting to a corporate reorganization which they

## 2. *Petitioners' Situation.*

The question of whether petitioners are so situated that the disposition of the action "may as a practical matter impair or impede [their] ability to protect that interest" is intimately related to the question of what the interest sought to be protected is. The second cannot be answered without reference to the first. Because the parents have not explained what their interests are, we cannot assess whether they are so situated that intervention is necessary to protect them.

Dr. Hansen, on the other hand, has spelled out his interests and if they are interests which should be protected by a court at all, he is so situated that he should be permitted to intervene. But as indicated, this court seriously doubts that he has shown any legally protectable interests.

## 3. *Adequate Representation.*

Petitioners contend that they are being inadequately represented by the school board simply because that board has voted not to appeal this court's decree. Yet the only reason they give for seeking to appeal it is that they "dissent" from it. They concede that the school board has acted in good faith in choosing not to appeal and, as indicated, it is the Board that is vested with the statutory authority to shape and administer school policy. While petitioners may disagree with the Board's policy-making, they do not allege that the Board has abused or acted beyond its statutory authority.

In Blocker v. Board of Education of Manhasset, New York, supra, decided be-

fore the 1966 change in Rule 24, the decision went off on the ground that the parents were not legally bound. Nonetheless, Judge Zavatt's comments on adequacy of representation are still highly relevant, for that part of the rule has not been amended. After citing a passage from his earlier judgment to the effect that the board, not the electorate, has the responsibility for school attendance policies, a responsibility that the board until that time had not lived up to, he said:

"Now that the Board has recognized this fact and decided not to appeal, some electors of the community have asked this court to appraise the soundness and propriety of that decision by finding that the petitioners may not be represented adequately by the Board. The issue is simply one of disagreement between the proposed intervenors and the Board; no allegation is made that the Board has been negligent or guilty of bad faith in reaching its determination. The Supreme Court, in a closely analogous situation, has warned us of the danger inherent in such a judicial appraisal: * * * Sam Fox Publishing Co. v. United States, 366 U.S. 683, 698, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961). As one commentator has put it, '[r]epresentation by the governmental authorities is considered adequate in the absence of gross negligence or bad faith on their part.' 4 Moore, Federal Practice ¶ 24.08, at 43 (2d ed. 1963). The court need not, however, pass upon the adequacy of the representation afford-

contested because they did not consider the plan compensated them adequately. The bondholder-attorney who had been representing his own and their interests decided to settle his claim and abandon the appeal; petitioners were allowed to intervene to continue it in their own behalf.

Finally, in Zuber v. Allen, 128 U.S.App. D.C. 297, 387 F.2d 862 (1967), where the Court of Appeals just recently allowed intervention to take an appeal, the interest of petitioners is direct and substantial.

They are dairy farmers receiving differential payments pursuant to a regulation promulgated by the Secretary of Agriculture. See generally Blair v. Freeman, 125 U.S.App.D.C. 207, 370 F.2d 229 (1966). Plaintiffs in the action are non-recipient farmers challenging the authority of the Secretary to make such payments; they have been granted summary judgment. Intervenors have to date had $675,000 withheld from their monthly allotments because of the action, so their direct pecuniary interest is undeniable.

ed the proposed intervenors by the defendant School Board. \* \* \*" 229 F.Supp. at 715.

And in Alleghany Corporation v. Kirby, 2 Cir., 344 F.2d 571 (1965), cert. dismissed as improvidently granted, 384 U.S. 28, 86 S.Ct. 1250, 16 L.Ed.2d 335 (1966), two minor stockholders moved for and were denied intervention for purposes of applying to the Supreme Court for a writ of certiorari, the Board of Directors having voted after due deliberation not to seek certiorari. The Second Circuit affirmed, Judge Kaufman holding:

> "We fully agree with the District Court's conclusion that, on the record before it, the decision of the independent members of the Board of Directors not to apply for certiorari, after consultation with independent counsel and full presentation and consideration of relevant business and legal implications, did not result in 'inadequate representation as a matter of law.' We know of no proposition of law that permits shareholders, absent any allegations of bad faith, collusion or negligence, concededly neither present nor charged here, cf. Sam Fox Publishing Co. \* \* \*, to intervene, as of right,

in order to continue litigation that independent members of the Board of Directors, acting in good faith and in the exercise of sound business judgment, have decided to terminate. \* \* \*

\*　　\*　　\*　　\*　　\*　　\*

> "Adequacy of representation, at least in the context of this case, depends not on our assessment of whether the Board should have authorized a certiorari petition, but rather on whether shareholder interests were fully and fairly considered when the Board reached its decision. Stated somewhat differently, the mere fact that a particular decision is adverse to certain interests does not necessarily mean those interests were not adequately represented in the decision-making process or in the decision itself." 344 F.2d at 573–574.

 While the requirement of negligence or bad faith is not always a prerequisite to intervention for purposes of taking an appeal, those cases which have allowed such intervention without that showing are generally distinguishable from the instant case with respect to the question of adequacy of representation as well as that of interest.[11] Con-

---

11. In Wolpe v. Poretsky, supra Note 10, the court noted that, although the zoning order subsequently invalidated by the District Court had been adopted by the Zoning Commission after a public hearing, the decision not to appeal was made in a non-public executive session. While the court did not rely on this, it thought the matter relevant to whether the property owners were being adequately represented—in court and elsewhere. In turning to the specific question of adequacy, Judge Arnold prefaced his discussion by stating that "[w]e do not go so far as to hold that adequate representation requires an appeal in every case." 79 U.S. App.D.C. at 143, 144 F.2d at 507. He then went on to note the following circumstances: An administrative body (Zoning Commission) had been found to have acted arbitrarily and capriciously in the face of a strong presumption that it had properly performed its duties; some of the District Court's reasons were more

pertinent as arguments to influence the judgment of the Commission in balancing various zoning interests than as legal arguments to support the ruling; thus, although eschewing any intent to pass on the merits of the decision, Judge Arnold observed that there was enough on the record to show that refusing to appeal the decision was not adequate representation.

In sum, *Wolpe* is a case where a body charged with protecting property interests had been overruled by what appeared as a questionable court decision; that body had, without public discussion, decided not to appeal; the effect of that decision was to wipe out adjoining property owners' statutory right to enjoin unlawful construction.

In Pelligrino v. Nesbit, supra Note 10, the adequacy of representation holding was tied in to § 16(b)'s requirement of diligent prosecution: "Appellant was entitled to intervene, as a matter of right,

sequently, while it may not be decisive that the statutorily designated representative of petitioners' interest has chosen at open meeting and concededly in good faith not to appeal, Atlantic Refining Company v. Standard Oil Company, 113 U.S.App.D.C. 20, 304 F.2d 387 (1962); Zuber v. Allen, 128 U.S.App.D.C. 297, 387 F.2d 862 (1967), it does place squarely on the petitioners the obligation to demonstrate and specify a substantial interest which they can only

in accordance with the provisions of § 16 (b) if appellee corporation has failed 'diligently to prosecute' the suits it instituted to recover the short-swing profits of its officers." 203 F.2d at 466. The court then went on to make two points relevant here. First, in response to the corporation's argument that a board of directors may, subject to the exercise of good faith and sound business judgment, determine whether it is in the corporate interest to appeal, the court held that § 16(b) imposes a limitation on the normal discretion of the directors. This was based on the argument that if directors—who are most likely not too anxious to sue corporate officers anyway—could terminate litigation after judgment, then the policy of § 16(b) would be frustrated. Second, the court followed the *Wolpe* approach regarding the merits of the trial court's decision: "Although diligent prosecution may not require an appeal in every case where a trial court enters judgment for the defendant [officers], stockholder intervention for the purpose of perfecting an appeal from such a judgment should be liberally granted where the judgment of the trial court raises substantial and important questions of law in relation to its correctness. * * * Such questions are presented by the judgments on the merits in the instant case." 203 F.2d at 467. After discussing three major aspects of the trial court's holding, noting *inter alia* that the S.E.C. had filed an *amicus* brief against the judgment and that the judgment seemed to be in conflict with Supreme Court precedent, the court concluded: "We have discussed the judgments of the District Court on the merits only to the extent thought necessary to show that the corporation's decision not to appeal * * * constituted a failure diligently to prosecute the suits since the correctness of the judgments presented substantial and important questions of law." 203 F.2d at 468.

*Pellegrino*, then, is a case in which the court was acting to implement a specific statute—§ 16(b)—which was designed to protect both stockholders and the public interest against collusive corporate activity. That statute not only confers a special status on the individual stockholder, the intervenor, but it limits the normal discretion of the representative entity, the board of directors. And see Nedick's Stores, Inc. v. Genis, S.D.N.Y., 34 F.R.D. 235 (1963); Molybdenum Corp. of America v. International Mining Corp., S.D.N.Y., 32 F.R.D. 415 (1963), both noting § 16(b)'s liberalizing influence on Rule 24. No such statute limits the school board's discretion in deciding whether to appeal *Hobson*.

The broad dictum in *Pellegrino* to the effect that intervention should be allowed even after a final judgment where it is necessary to preserve some right which cannot otherwise be protected, and that such a right which cannot otherwise be protected than by intervention is the right to appeal from the judgments entered on the merits by the District Court, simply begs the question. One does not have a right to appeal in the abstract, but only if he establishes such an interest that he should be allowed to intervene to appeal to protect his interest. One does not have the right to appeal unless he can establish that his interest is not adequately represented by the decision not to appeal.

American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., supra Note 10, is an obvious case of inadequate representation, the attorney's individual decision being nothing more than a personal judgment that he did not wish to continue the litigation; he did not even purport to be making a representative decision in abandoning the appeal.

Zuber v. Allen, supra Note 10, seemingly extends *Wolpe* and *Pellegrino* by allowing intervention where it only "appeared" that an appeal was not going to be taken. Being an order, there is of course no discussion of the rationale of the decision. However, it is not precedent for automatically allowing intervention whenever an appeal is not taken, for the interests in *Zuber* were clearly established and the Secretary of Agriculture had at trial conceded that he did not represent individual interests but rather the larger public interest.

protect through intervention. This the petitioners have not done. Nevertheless, in order to give the Court of Appeals an opportunity to pass on the intervention questions raised here, and the questions to be raised by the appeal on the merits if it finds the intervention was properly allowed, this court grants the motions to intervene.[12]

12. Petitioners have not sought permissive intervention pursuant to Rule 24(b), presumably because that section of Rule 24 seems inappropriate where intervention is sought for purposes of appealing a decision which the party to the main action has decided not to appeal. Apart from intervention pursuant to a statute conferring a conditional right to intervene, Rule 24(b) permits intervention only when "an applicant's claim or defense and the main action have a question of law or fact in common." The rule, then, contemplates adding additional parties to an existing controversy, and does not contemplate intervention to permit a new party to carry forward issues which the parties to the main action have chosen not to contest on appeal.