427 F.2d 1118
 71-1 USTC P 9236
 Antonio A. DIAZ, Plaintiff,
v.
The SOUTHERN DRILLING CORP., also known as South-Eastern
Drilling Inc., etal., Defendants, and Trefina,
A.G., Intervenor-Appellant.
GREAT AMERICAN INVESTMENT COMPANY, Limited, etc., Plaintiff,
v.
W. P. CLEMENTS, Jr., et al., Defendants, and United States
of America, Intervenor-Appellee.
 No. 27197.
 United States Court of Appeals, Fifth Circuit.
 March 2, 1970, As Modified on Denial of Rehearing May 6, 1970.
 
 D. Marshall Simmons, Thomas W. Luce, III, Special Counsel, Dallas, Tex., G. F. Smith, Weslaco, Tex., for intervenor-appellant, Jenkens, Anson, Spradley & Gilchrist, Dallas, Tex., of counsel.
 Harry D. Shapiro, Asst. Atty., Dept. of Justice, Johnnie M. Walters, Asst. Atty. Gen., Howard M. Koff, Crombie J. D. Garrett, Jr., Attys., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Attys., Tax Div., Dept. of Justice, Washington, D.C., Eldon B. Mahon, U.S. Atty., Martha Joe Stroud, Asst. U.S. Atty., Dallas, Tex., for appellee.
 Julian Mike Joplin, Mark Martin, Arthur S. Goldberg, Dallas, Tex., Harvey Rosenberg, Silver Spring, Md., Farrell D. Smith, Corpus Christi, Tex., Donald S. Weinstein, New York City, for other interested parties.
 Before THORNBERRY, GODBOLD and MORGAN, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 The trial court granted default judgment against appellant Trefina, A.G., in this case, as a sanction for the repeated failure of that corporation's officer, Widmer, to make himself available for deposition. Trefina now appeals, contending (1) that the intervention of the United States, the party requesting the deposition below, was improper in this case, and (2) that the court's use of the harsh sanction of default judgment was an abuse of discretion. We find that the intervention was proper. Furthermore, we conclude that the default judgment was a foreseeable, just and appropriate response to Trefina's failure to comply with the orders of the court, and we accordingly affirm.
 
 
 2
 The appeal before us is a relatively simple portion of a lengthy, complicated case. The suit began with drilling contract work done in Argentina by Southeastern Drilling Company, a Panamanian corporation. Southeastern realized a substantial profit on the contract, and a number of persons sued it in the United States to recover commissions allegedly due them. Trefina, the appellant here, entered the case by intervention and claimed on an assignment from one of the original agents. Trefina is a Swiss corporation that does no business in the United States.
 
 
 3
 The performance of the commission agreement was rendered more complicated by a claim of the Internal Revenue Service that Southeastern owed income tax on the proceeds of the drilling contract. The Government moved to intervene in this case to assert a lien against the funds claimed by Trefina. The case had been divided into separate trials, one of which concerned a dispute between the claimants themselves and the other of which concerned Southeastern's liability; the Government had no interest in the claimant's dispute and sought to intervene in the second trial only. The court held a hearing on the intervention issue while the jury was out during the first trial. With counsel representing all parties present at the hearing, the court granted the Government's motion to intervene.
 
 
 4
 Having intervened, the Government sought to take the deposition of Trefina's officer Widmer. It gave Trefina notice, through its attorney of record, that it intended to take the deposition on a fixed date in Dallas, Texas. Mr. Widmer did not appear. Instead, Trefina filed a motion to quash the deposition notice on the day set for the taking of the deposition. The Government promptly moved for default judgment. The trial court denied both motions and ordered that the deposition be taken within 60 days. Again the Government gave proper notice for the deposition; again Mr. Widner failed to appear without prior communications from Trefina; and again the Government moved for default judgment. Trefina filed a 'medical certificate' (consisting of a letter written by a doctor in Zurich) advising that because of his health Mr. Widmer would not undertake any trip 'of major importance.' For the first time, Trefina also opposed the intervention of the United States, eight months after the trial court's allowance of that intervention. The trial court again sustained the intervention and ordered for the third time that the deposition be taken, this time within 30 days. As a pointed hint to Trefina, the court did not deny the Government's motion for default judgment this time, but stated that it would delay ruling on the motion until after the 30-day period. When this time had elapsed, having been presented with an affidavit of the Government to the effect that Trefina had been 'unable' on two occasions to specify a date for the deposition, the trial court held a hearing on the default judgment motion and granted it.
 
 I. THE APPEALABILITY OF THE ORDER
 
 5
 Before considering the merits of appellant's case, we are faced with a jurisdictional question. We must decide whether this order, disposing of only a part of the case, is appealable in the context of this multiple-party, multiple-claim litigation. There is no question that the order is final in the sense that it completely determines the priority of the United States' rights as against Trefina, but Rule 54(b), Fed.R.Civ.P., adds another dimension to the determination of finality in cases in which multiple claims are presented. It states that any order 'which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties * * *.' Ordinarily, therefore, an order of the type appealed from in this case would not be final absent an express direction of the trial court entering judgment and finding that there is no just cause for delay, in accordance with Rule 54(b).
 
 
 6
 It has long been recognized, however, that there is a narrow class of orders, known as 'collateral orders,' that may be considered final for purposes of appeal even though they issue in the context of incomplete multiple-claim or multiple-party suits. The Supreme Court has defined collateral orders as 'that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. * * * We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it.' Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528; see C. Wright, Federal Courts, 398-99 (1963). See also Local No. 438, Const. & Gen. Laborers' Union v. Curry, 1963, 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed.2d 514; Radio Station WOW v. Johnson, 1945, 326 U.S. 120, 65 S.Ct. 1475, 89 L.Ed. 2092. These authorities indicate that (1) the substance of collateral orders must be independent and easily separable from the substance of other claims, (2) at least part of the question of collateralness is determined by the need to secure prompt review in order to protect important interests of any party, and (3) the finality issue is to be examined in light of practical, rather than narrowly technical, considerations.
 
 
 7
 The default judgment here was issued as a sanction for appellant's failure to produce its officer for deposition, an issue that depends entirely on the circumstances surrounding that failure as considered in light of a procedural rule, Fed.R.Civ.P. Rule 37(d). The record discloses little about the underlying claims for commissions, and we do not need to know about the merits of those claims. The intervention issue is somewhat more closely intertwined with the merits of the other substantive issues, but only as regards the practical relationship of the Government's interest in the case to interests of other parties, and we think that this question can be determined without reference to the merits of the other issues. Thus the order appealed from is collateral in the sense that it is completely separable and independent from all other claims of all other parties. As a practical matter, furthermore, there is a need to secure prompt review to protect the legitimate interests of the appealing party, since Trefina's commission would be subject to the claims of the United States unless the default judgment were vacated on appeal. Trefina cannot make important decisions about its further participation in this suit without having its rights determined now. For these reasons, we hold that the default judgment is an appealable collateral order and that Trefina may also attack the intervention, which was prior to and necessary for the default judgment, on this appeal.
 
 II. THE INTERVENING ISSUE
 
 8
 We turn next to consideration of the question whether intervention by the United States was proper under Fed.R.Civ.P. Rule 24. The Government intervened here not because the underlying issues were of public concern, but simply because it wanted to assert a lien (unrelated to the underlying issues) on a fund before the court. Subsection (a) of Rule 24 provides for intervention of right upon timely application when either (1) a statute of the United States confers an unconditional right to intervene or (2) the applicant claims an interest relating to the subject of the action which may as a practical matter be impaired unless intervention is allowed and which is not adequately represented by existing parties.
 
 A. The Government's Right to Intervene
 
 9
 The Government asserts that a statute, Int.Rev.Code of 1954 7424, afforded it an unconditional right to intervene in this case. Section 7424 provides that 'If the United States is not a party to a civil action or suit, the United States may intervene in such action or suit to assert any lien arising under this title on the property which is the subject of such action or suit'. On its fact, this language seems unconditional. The issue is rendered somewhat doubtful, however, by further language providing for the preservation of any valid lien in the event the Government's application to intervene is denied, a provision that obviously recognizes the possibility of denial. The legislative history of the statute, furthermore, lends some support to appellant's contention that the right is not intended to be absolute.[1] We find, however, that actually we do not need to consider the question whether 7424 gives an unconditional right to intervene because the conditions required by the second subsection of Rule 24(a) are met in this case.
 
 
 10
 This latter intervention provision requires three things: (1) the assertion of interest in the subject of the action, (2) a possibility that the disposition of the action may as a practical matter impede protection of the interest, and (3) inadequacy of representation of the interest by existing parties. Appellants contend that the intervention here fails to meet the Rule in all three respects. They first argue that the Government does not assert a sufficient interest in the subject of the action. It is true that, even though Rule 24(a)(2) provides that propriety of intervention is to be tested by practical considerations, intervention still requires a 'direct, substantial, legally protectable interest in the proceedings.' Hobson v. Hansen, D.D.C.1968, 44 F.R.D. 18, 24. We do not believe, however, that the interest has to be of a legal nature identical to that of the claims asserted in the main action, as appellants seem to suggest. All that is required by the terms of the rule is an interest in the property or other rights that are at issue, provided the other elements of intervention are present. The cases cited by appellants are cases in which intervention was denied because the interest was speculative or had no legally protectable nature.[2] By contrast, the Government in this case is asserting a tax lien, clearly a legally cognizable interest in property, which it seeks to attach to a res that is before the court. Interests in property are the most elementary type of right that Rule 24(a) is designed to protect. Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 1967, 386 U.S. 122, 129, 87 S.Ct. 932, 936, 17 L.Ed.2d 814; Atlantis Dev. Corp. v. United States, 5th Cir. 1967, 379 F.2d 818, 826. We hold that the Government is asserting an interest in the property that is the subject of the suit within the meaning of Rule 24(a).
 
 
 11
 Appellants also contend that the Government has not shown that it may be impeded as a practical matter in protecting its interest if intervention is denied. This argument is based upon the undeniable proposition that if the Government is not in the suit, it will not be affected by stare decisis, res judicata, the law of the case, or any other doctrine that could render its claim incapable of legal enforcement. The Government, we recognize, could simply file an independent suit once the winners of the present action were determined. The soundness of this premise, however, is no guarantee against sophistry in the conclusion. Obviously, legal concepts do not completely determine practical relationships, and that is the reason the rule is written as it is. Trefina is a Swiss corporation. As appellants themselves point out, the United States cannot get in personam jurisdiction over it to here.[3] We have no difficulty in holding that a decision resulting in the necessity of the United States bringing a lien action in the Swiss courts, to assert rights in property that is now being adjudicated by a court of the United States, would 'impede' the protection of those rights 'as a practical matter' within the meaning of Rule 24. Cf. Cascade Natural Gas Corp. v. El Paso Natural Gas Co., supra. This is especially so since Congress itself has expressly recognized the inadequacy of separate tax lien proceedings in cases of this nature by its enactment of 7424, the statute relied upon by the Government.
 
 
 12
 Finally, appellant asserts that the rights of the Government are adequately protected by the existing parties to the main action. We disagree. Appellant is correct in stating that the Government is adequately represented as to the issue of Trefina's recovery from Southeastern. Trefina entered the suit with the sole purpose of effecting this recovery. Nonetheless, the argument is lacking in merit. Appellant ignores the fact that no existing party to the suit views the Government's tax lien favorably. Certainly Trefina does not. Where the supposed representative actually represents an interest adverse to the intervenor, the representation is obviously not adequate. See Martin v. Kalvar Corp., 5th Cir. 1969, 411 F.2d 552, 553.
 
 
 13
 Since the Government thus asserts a cognizable interest that is not adequately represented by existing parties and may be impeded as a practical matter if intervention is denied, the requirements of Rule 24(a)(2) are met in this case. The Government accordingly had a right to intervene provided its application to do so was timely. We proceed to examine this question.
 
 
 14
 B. The timeliness of the Government's Application
 
 
 15
 Appellant Trefina points out that the application of the Government to intervene came a little over a year after the commencement of this litigation and approximately a year after the date that the Government clearly knew of the suit. Trefina also asserts that the application was filed only five days before trial. This contention misrepresents the circumstances, because the case had been broken into two separate lawsuits, and the United States was not concerned in the one that was set five days after the application. The trial court informed the parties that it would hold a hearing on the intervention before that trial was over, and it did so. At the time of the intervention, there had been no legally significant proceedings in the second of the two lawsuits other than completion of discovery and a pretrial that determined that there were to be two separate suits. There is no showing of any delay in the process of the overall litigation by the Government's filing of its application at the time it did.
 
 
 16
 Under these circumstances, we clearly cannot hold that the application was untimely. In the first place, timeliness is a question addressed to the sound discretion of the trial court, and we cannot reverse its allowance of the intervention absent an abuse of that discretion. 2 W. Barron & A. Holtzoff, Federal Practice and Procedure 594 (Wright ed. 1961); 3B J. Moore, Federal Practice P24.13(1) (1969). There is no abuse of discretion here. Timeliness of intervention is to be judged by two criteria: (1) The length of time during which the proposed intervenor has known about his interest in the suit without acting, and (2) the harm or prejudice that results to the rights of other parties by delay. In the context of this lengthy, complicated litigation, based on a contract signed over a decade ago, we do not think that the Government forfeited its right to intervene solely by the passage of a year after it knew of the suit. Cf. Kozak v. Wells, 8th Cir. 1960, 278 F.2d 104 (application timely even though a year late); Innis, Speiden & Co. v. Food Mach. Corp., D.C.Del.1942, 2 F.R.D. 261 (application timely after four years); Alleghany Corp. v. Kirby, 2d Cir. 1965, 344 F.2d 571 (application untimely after sixteen months). Furthermore, the more important question is not the mere length of time but the possibility of prejudice to existing parties that the delay may cause. This consideration is to be evaluated against the liberal treatment that is to be accorded applications for intervention of right; such applications 'may well be granted at a time in the suit when it would be wise to deny permissive intervention.' J. Moore, supra at P24.13(1). Since few legally significant events have occurred in the separate part of the case in which the Government is involved, and since many courts have allowed intervention in meritorious cases after trial, after judgment, and even after settlement, see W. Barron & A. Holtzoff, supra at 368 n. 36, J. Moore, supra at 24-526 to 24-528, we cannot find that the time of the application caused prejudice to Trefina's rights of a magnitude sufficient to justify overturning the trial court's decision.
 
 III. THE APPROPRIATENESS OF DEFAULT JUDGMENT
 
 17
 The trial court granted default judgment as a sanction against Trefina pursuant to Rule 37(d), the pertinent parts of which read as follows:
 
 
 18
 If a party or an officer or managing agent of a party willfully fails to appear before the officer who is to take his deposition, after being served with a proper notice, * * * the court on motion or notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party. Professor Wright observes that 'without adequate sanctions, the procedure for discovery would be ineffectual. Under Rule 37 a party who seeks to evade or thwart a full and candid discovery incurs the risk of serious consequences. * * *' C. Wright, Federal Courts 90 (1963). While it is true that the courts should impose sanctions no more drastic than those actually required to protect the rights of other parties, the language of Rule 37(d) makes clear that the application of sanctions is entrusted to the discretion of the trial judge, and overleniency is to be avoided where it results in inadequate protection of discovery. See C. Wright, supra, at 346 & n. 14.
 
 
 19
 Trefina attempts to show abuse of discretion by comparing each of the clauses of the Rule with the facts of this case and concluding that none of the requirements are met. It begins by stating that default judgments under Rule 37 are to be carefully reviewed and must be reversed unless all requirements are strictly complied with. Waterman, An Appellate Judge's Approach When Reviewing District Court Sanctions Imposed for the Purpose of Insuring Compliance with Pre-Trial Orders, 29 F.R.D. 420, 423, 425 (1962). Trefina first argues that it had not been shown that the proposed deponent Widmer was an officer or managing agent at the time his deposition was to be taken. This argument is gamesmanship. The record actually contains statements by Trefina's own representatives that Mr. Widmer was an officer. Trefina has never denied that he was. Under these circumstances, we think it far more probable than not that Mr. Widmer was an officer at the time of the deposition, and accordingly we hold that this objection is without merit.
 
 
 20
 18$ Similarly, Trefina argues that it was not served with proper notice of the deposition. The argument as Trefina has presented it appears to hypothesize that the deponent was ordered to appear in his individual rather than official capacity, as in Gillam v. A. Shyman, Inc., D.Alas.1962, 205 F.Supp. 534. The notice, however, was addressed to 'Mr. Widmer, Officer/ Trefina, A.G.,' and was served simultaneously on Trefina's attorney of record, and therefore this argument is without merit.
 
 
 21
 Next, Trefina argues that the record does not show that its agent acted 'willfully' in failing to appear. We disagree. Appellant failed to appear not once but three times, without good cause being shown. Each time it failed to give any advance warning and offered no viable alternative for the taking of the deposition. Although a party should be able to present grounds for excuse freely for the consideration of the trial court, we think that Trefina's frequent presentation of diverse, unmeritorious excuses[4] is some evidence that it had no good cause for its conduct. It acted in the teeth of pointed indications from the trial court that the court considered Trefina's actions to be openly disrespectful of its orders and that it was contemplating severe sanctions. These circumstances we think, suffice to show that the failure was not an 'accidental or involuntary non-compliance,' Cf. Weston & Brooker Co. v. Continental Cas. Co., 4th Cir. 1962, 303 F.2d 91, or even one that evidences a strong though inconclusive possibility of good faith excuse, as in Producers' Releasing Corp. De Cuba v. PRC Pictures, Inc., 2d Cir. 1949, 176 F.2d 93. The trial judge was warranted in concluding that the refusal was intentional and without good cause.
 
 
 22
 Finally, Trefina argues that abuse of discretion inheres in the application to these facts of the harshest sanction available under the Rules. We have found, however, that the requirements of the Rule were met and that consequently one of the sanctions should have been applied, and we are unable on review to hold that the trial court could have fashioned an equally effective but less drastic remedy. The Rule provides three possible actions: Striking of pleadings, dismissal, or default judgment. Since Trefina is defending this part of the action against the Government, dismissal or striking of pleadings would be inappropriate. Dismissal of Trefina's affirmative complaint seeking its commission would be a sanction against it also but would operate to cut off the derivative rights of the United States in the fund Trefina claims. The default judgment was warranted, also, in light of the strong showing of willful evasion by the proposed deponent. As the court stated in Pioche Mines Consolidated, Inc. v. Dolman, 9th Cir. 1964, 333 F.2d 257, 269, in sustaining a similar default: 'The court kept the door open until it became very clear that (the proposed witness) would depose only upon his own terms, regardless of what the court's terms might be. Rule 37(d) advised him of the consequences.' Here, appellant was in a position not only to see the sword of Damocles hanging over its head but to watch as the events it set in motion sawed at the thread securing the sword. Prudence, if not a willingness to respect the trial court's orders, should have prompted it to move in some direction. Thus the default judgment was a foreseeable and appropriate response to Trefina's refusal to act, and we hold that the trial court did not abuse its discretion in ordering it.
 
 
 23
 Affirmed.
 
 
 24
 It should be noted that Trefina's special counsel on this appeal became counsel of record only on October 3, 1968, and did not participate in the events prior to that date which contributed to the granting of the default judgment.
 
 
 
 [1]
 See U.S.Code Cong. & Admin.News, pp. 3724, 3747-48 (1966) (Senate Report on Federal Tax Lien Act of 1966)
 
 
 [2]
 Old Colony Trust Co. v. Penrose Indus. Corp., 3d Cir. 1968, 387 F.2d 939 (wouldbe purchasers of property sold to satisfy security agreement have no cognizable interest); United States v. Benford, N.D.Ind.1968, 44 F.R.D. 231 (potential criminal defendant may not intervene in action to oppose subpoena against third party, even though evidence subpoenaed may damage him); Isbrandtsen Co. v. S.S. Kokoh Maru, S.D.N.Y.1966, 263 F.Supp. 784 (owner of damaged goods has no interest in action between bailee and subsequent bailee who had possession of the goods when damaged); Hobson v. Hansen, D.D.C.1968, 44 F.R.D. 18 (interests of some prospective intervenors unspecified, interests of public official in protecting reputation not cognizable where legality only of official action at issue.)
 
 
 [3]
 Trefina argues that its unavailability for service weighs against our affirmance of the intervention. It cites cases in which litigants have used the device of intervention in suits in which they had no interest in an attempt to secure in personam jurisdiction that was otherwise unattainable. This case presents no such 'bootstrap' situation. The Government is entitled to intervene not because of the issues in the suit or the parties, but because it asserts an interest in the res before the court. As a consequence of this interest, the difficulty of suing Trefina elsewhere becomes an appropriate consideration
 
 
 [4]
 After the second default of Widmer, Trefina presented an unverified letter purportedly from a Swiss doctor stating in the vaguest of terms that Widmer should not travel because of his health. The trial court properly regarded the letter as evidencing no excuse at all. Trefina could have presented adequate evidence of Widmer's infirmity. Instead, it did not refer to Widmer's health either upon any other opposition to the deposition or upon opposition to the default judgment. Another unmeritorious excuse is Trefina's contention, after the second default, that the deposition should not be ordered until the trial court had ruled on intervention. At that time, the court had allowed the intervention eight months previously, and Trefina had just filed an opposition to it for the first time. These excuses were offered after the time for the deposition