The NATIONAL ASSOCIATION FOR NEIGHBORHOOD SCHOOLS OF PITTSBURGH, INC., and Janet R. Podnar, on her own behalf, and as parent and guardian of David R. Podnar, Jr., a minor and Charles W. Wilhere, Jr. and Paula Y. Wilhere, his wife, on their own behalf and as parents and guardians of Micheal Wilhere, a minor, and Patrick J. Zilles and Bonnie B. Zilles, his wife, on their own behalf and as parents and guardians of Jennifer B. Zilles and Heather L. Zilles, minors, and Charles F. Kern and Nancy Lee Kern, his wife, on their own behalf and as parents and guardians of Kristen M. Kern, a minor, All of the Above Individually and on Behalf of all Others Similarly Situated,

v.

BOARD OF PUBLIC EDUCATION of the SCHOOL DISTRICT OF PITTSBURGH, PENNSYLVANIA.

Civ. A. No. 80–1242.

United States District Court,
W. D. Pennsylvania.

May 29, 1981.

David Max Baer, Pittsburgh, Pa., for plaintiffs.

Robert J. Stefanko and Persifor S. Oliver, Jr., Pittsburgh, Pa., for defendant, Board of Education.

Ellen M. Doyle, Pittsburgh, Pa., for proposed intervenor.

## OPINION

ROSENBERG, District Judge.

This matter is presently before me on the motion of the Pennsylvania Human Relations Commission (PHRC) to intervene as a defendant, as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2),[1] in an action brought by the National Association for Neighborhood Schools (NANS) and four groups of parents of minor children attending the Pittsburgh Public Schools against the defendant, Board of Public Education of the School District of Pittsburgh, Pennsylvania (Board). The complaint was filed to enjoin the compulsory busing of children because it was "based solely upon race as implemented by defendant, pursuant to the Amended Pittsburgh Desegregation Plan." This the plaintiffs assert was in violation of the Fourteenth Amendment of the United States Constitution and the Civil Rights Acts.

An exhaustive hearing was held on the plaintiff's motion (September 5, 1980) at which time the PHRC filed an amicus curiae brief as did an individual who had formerly been a school director. The PHRC sided with the Board and argued against the issuance of an injunction because it would interfere with the originally initiated busing promoted by the Board. This attitude by the PHRC was in contradiction to an attitude which it had held before for many months previous when it attempted by Commonwealth Court processes to prevent the school board from inaugurating its own busing plan because it differed from that recommended by the PHRC. The motion for a preliminary injunction was denied on September 18, 1980, for a lack of evidence of a constitutional basis and for the additional reason of laches. *National Ass'n. Etc. v. Board of Ed.*, 497 F.Supp. 471 (W.D. Pa.1980). At the same time the plaintiffs and the defendant were instructed to proceed with discovery and pretrial processing in order to permit a final hearing in the case. Pretrial procedures were scheduled to close on February 20, 1981.

The PHRC's motion seeks to intervene as a party defendant because it has the responsibility for enforcing the State's mandate to eliminate racial segregation in the public schools[2] and because of its interest "in obtaining a proper remedy for prior racially discriminatory educational practices is not adequately represented by the existing parties to this action." Furthermore, the motion concerns itself with the possibility that a decision of this court may concern the assignment of students by race and as a practical matter impair or impede the commission's ability to enforce its judicially approved desegregation order.[3]

Additionally, the proposed answer of the PHRC as an intervening defendant raises

1. Federal Rule of Civil Procedure 24(a)(2), Intervention of Right provides in pertinent part that:

"Upon timely application anyone shall be permitted to intervene in any action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter

impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

2. See Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.

3. *Pa. Human Relations v. School Dist. Etc.*, 480 Pa. 398, 390 A.2d 1238.

the same defenses asserted by the Board and it raises an additional issue relating to the underlying concept and rationale of the Pittsburgh Amended Desegregation Plan, and whether the Board's actions go far enough in advancing the plan contemplated by the PHRC.

While I do not repeat much that I have said in my opinion denying the preliminary injunction, I do keep in mind the history of the case as it relates between the PHRC and the Board. As already stated, the matter between the PHRC and the Board has been the subject of considerable litigation in Pennsylvania courts—and that subject should be left there.

In 1972, the Commonwealth Court directed five school districts, including Pittsburgh and Philadelphia School Districts, to submit desegregation plans and timetables in accordance with the PHRC's 1968 guidelines ("Recommended Elements of a School Desegregation Plan"), *Philadelphia School District v. Human Relations Commission*, 6 Pa. Cmwlth. 281, 294 A.2d 410 (1972).

In 1973 the Supreme Court of Pennsylvania held that the PHRC had the power to order desegregation in schools where racial imbalance resulted from solely de facto segregation. *Uniontown Area School District v. PHRC*, 455 Pa. 52, 313 A.2d 156 (1973). During the period from 1973 through 1976 discussions between the Board and the PHRC regarding the "February 1973 Plan" were conducted by which the two parties attempted to agree on the various details of reorganization. By order dated January 13, 1977, the Commonwealth Court again directed the Board to "correct racial imbalance in its schools, in accordance with the law and the Commission's guidelines", and established a new timetable for implementation. In 1978 the Supreme Court of Pennsylvania affirmed the order of the Commonwealth Court with respect to the requirement of the Board to submit to the Commission a definitive plan to correct racial imbalance in its schools. *Pa. Human Relations v. School Dist. Etc., supra.*

In 1979 two plans were submitted by the Board which were both rejected by the PHRC. In April 1980, the Board filed a petition in the Commonwealth Court seeking declaratory relief to the effect that the Amended Pittsburgh Desegregation Plan (Amended Plan) was in compliance with the Commonwealth Court mandate. The PHRC filed an answer and sought to have the Board found in contempt of court. The instant plaintiffs sought to intervene in that case but were refused intervention.

On July 24, 1980, the PHRC applied to the Commonwealth Court to Stay the Implementation of the Amended Plan because it allegedly did not go far enough in eliminating racial imbalance. The Commonwealth Court denied that application [4] stating that a resolution of the merits of the Amended Plan as to whether it complies with the Order of Court of November 8, 1978 would probably not occur in that court until mid 1981, and that the earliest Pennsylvania Supreme Court disposition would appear to be in mid 1982, and therefore the status quo should not be frozen for three more years pending this resolution.

The issue regarding the viability and legality of the Amended Plan according to Pennsylvania law is presently before the Commonwealth Court with oral argument scheduled for June 2, 1981.[5]

■ The issue before this court in the original case between the plaintiffs and the defendant is unrelated to that in the Commonwealth Court and is simply a matter of whether this Federal court has jurisdiction on the issue as raised by the plaintiffs in this case. That issue is: Is busing unconstitutional?

The plaintiffs in this case demand that busing be abolished. In order to strengthen their desire to eliminate busing they presented certain circumstantial supports as to the need for busing pupils and in what racial relationship they were chosen from

4. No. 568 C.D.1971, Opinion filed July 24, 1980, aff'd. Pa. Supreme Court, No. 80–2–305, Per Curiam, August 25, 1980.

5. No. 568 C.D.1971.

which they assert arises the constitutional issue. While I have preliminarily held that busing is constitutional under Federal law, the matter remains open only for the purpose of determining whether the busing is constitutional or not within the capability of the plaintiffs to prove that it is unconstitutional.

If I should hold busing is constitutional, it cannot bear upon how the busing is to be arrived at or from what phases of society or locales it must be done. That still must remain within the discretionary powers of the Commonwealth of Pennsylvania and its delegated Boards, as now being reviewed by the Pennsylvania courts.

Accordingly, the question here raised by the PHRC has no validity of concern on whether or not its plan or the implementation of its plan by the Board will be affected in a decision by this court. Furthermore, the Board has the PHRC's exact interest in this case because it is attempting to defeat an injunction which would bar busing entirely. PHRC can add nothing, nor does it show that it can add anything more.

Additionally, we view the fact that the Board had been the one most critically involved because of the many months it spent in the summer before the implementation of the busing plan, expending large sums of public tax money and making so many changes. It would be difficult to return the matter to the status quo if an injunction were imposed solely for the purpose of reorganizing the plan for busing. Thus, the PHRC has no reason to feel concern about the Board inadequately protecting its interest against the elimination of busing altogether.

The PHRC should have confidence in the Board in the knowledge that it was defending the case from the commencement of the action and that the PHRC only originally filed an amicus brief. It would seem, too, that the PHRC was not too much concerned with the Board's desire to defend, because it did not file the instant motion until four months later.

## FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2)

█ . The PHRC asserts that it should be admitted as a party defendant as a matter of right under Federal Rule of Civil Procedure 24(a)(2). Rule 24(a)(2) allows intervention of right when all of the following conditions are met: the applicant claims an interest relating to the property or transaction that is the subject of the action; the applicant is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest; his interest is not adequately represented by the existing parties; and the application must be timely. Four-fold test: *Blake v. Pallan*, 554 F.2d 947, 951, C.A. 9, 1977; cf, 7A *Wright & Miller, Federal Practice and Procedure*: Civil § 1908, p. 495 (1972).

## INTEREST AND IMPAIRMENT

█ Rule 24(a) requires that the PHRC have a direct, substantial and significant interest in this litigation. *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971); *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124, C.A. 5, 1970, cert. den. 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970); *Brewer v. Republic Steel Corp.*, 513 F.2d 1222, 1223, C.A. 6, 1975. As previously stated, the PHRC avers that its interest is not adequately represented "in obtaining a proper remedy for prior racially discriminatory educational practices", and that the Amended Plan fails to go far enough to eliminate racial imbalance in the Pittsburgh Public schools.

The matter before this court has nothing whatsoever to do with that issue of whether the action taken by the School Board was or was not in conformity with the Pennsylvania Human Relations Act and authority. That, as already stated, is a matter for state judicial determination and is now approaching a final resolution after more than nine years of litigation. This court is not the proper forum for the PHRC to attempt to expand or otherwise modify the Amended Plan, attack its premises or establish previous Board liability.

The narrow issue in the instant case before me, as I already plainly stated, is whether this inaugurated busing Plan, as it affects the plaintiffs, violates the Fourteenth Amendment to the United States Constitution and the Civil Rights Acts. I find that the PHRC does not have that sort of direct, substantial interest in the subject matter of this litigation which 24(a) requires, even construing that section liberally. *Cascade Natural Gas Corporation v. El Paso Natural Gas Co. et al.*, 386 U.S. 129, 133–134, 87 S.Ct. 932, 935–936, 17 L.Ed.2d 814 (1967).

In *Cascade, supra*, the Supreme Court found that the State of California, a utility and a gas distributor had a sufficient interest to intervene in divestiture hearings resulting from a civil antitrust suit brought by the federal government against a private gas company. The court there did not feel that the State's interest in restoring the acquired company as an effective competitor was being adequately handled by the federal government.

In *Nuesse v. Camp*, 385 F.2d 694, C.A.D. C.1967, intervention of right was granted to the Wisconsin Banking Commissioner, as plaintiff, in a suit brought by a state bank against the United States Comptroller of Currency to enjoin the authorization of a national branch bank in Wisconsin, where the state law did not permit branch banking. In support of the finding of interest, the court noted that the requirements of Rule 24 should receive "other than literal application in atypical cases", particularly in administrative cases. Secondly, since the issue involved overlapping fact and intertwined federal and state law in an area where Congress decided to "adopt and incorporate state law on issues of common concern", the Commissioner had an adequate interest in the construction of the federal act. *Nuesse, supra*, 385 F.2d at p. 700. The issue differed in that case from that in the instant case.

In *Brewer v. Republic Steel Corporation, supra*, the Ohio Civil Rights Commission filed a motion to intervene in a private employment discrimination suit brought in federal court under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. The Court of Appeals for the Sixth Circuit held that the Commission did not have the kind of direct, substantial interest in the litigation that would entitle it to intervene as a matter of right. In contrast to *Nuesse, supra*, the court stated that:

"[t]he federal and state statutes are not interdependent. Congress did not adopt or incorporate state law into the substantive provisions of Title VII and we see nothing in either body of law that reflects an 'admixture of national and state policies.' *Nuesse*, therefore, does not compel a conclusion that intervention should have been granted as a matter of right in this case." *Brewer, supra*, 513 F.2d at 1224.

In *Blake v. Pallan, supra*, the California corporation's commissioner unsuccessfully sought to intervene in a federal class action alleging violations of federal securities law and pendent state securities law claims. The court held that the commissioner failed to satisfy three of the four conditions for intervention as of right. The court found that unlike *Nuesse, supra*, the two securities law systems are autonomous, and the district court "need not interpret or even make reference to the state law in order to apply the federal law." 554 F.2d at 952. The court further stated that whatever interests the commissioner has are adequately taken care of by the court's authority to allow permissive intervention or amicus curiae status.

In the instant case as well there is no admixture of federal and state law, and this court need not interpret state law (Pennsylvania Human Relations Act) in order to determine if the School Board's actions in assigning plaintiffs' children to schools based on the Amended Plan were violative of federal constitutional and statutory mandates.

The PHRC does have an interest in executing its function within the Pittsburgh School District as prescribed by the General Assembly and interpreted by the Pennsylvania Courts. Certainly, if a federal court

found any race equalization plan unconstitutional, regardless of state location, this would as a practical matter impair or impede the ability of the PHRC to continue its present policies according to its perception of the state's interest. However, this specific interest, in combating any constitutional challenge to busing or the assignment of students based on race, generally, is and has been more than adequately represented by the Board in this litigation.

## ADEQUACY OF REPRESENTATION

In *Blake v. Pallan, supra*, 554 F.2d at 954–955, the Court considered three factors in determining adequacy of representation:

"(1) Are the interests of the present party in the suit sufficiently similar to that of the absentee such that the legal arguments of the latter will undoubtedly be made by the former;

(2) is that present party capable and willing to make such arguments; and

(3) if permitted to intervene, would the intervenor add some necessary element to the proceedings which would not be covered by the parties in the suit?"

The court found that although the purpose of the Commissioner of Corporations in pursuing the litigation and the relief he sought was different from the plaintiffs, those differences did not demonstrate a lack of adequate representation, and an analysis of the above factors evidenced the requisite sufficiency of representation.

In the instant case the PHRC and the Board have an identity of legal interest in defending this suit. However, the Board has fully demonstrated that it is capable and willing to advance all necessary legal arguments and authority to defend the suit as evidenced by the effective, thorough, and highly professional legal services already performed on behalf of the Board at the hearing on the preliminary injunction and the Board's motion to dismiss—as well as by its arguments and briefs. Finally, it is not apparent that the intervenor as a party would add any necessary element, relevant to this court's inquiry, which would not be covered by the present parties. The PHRC has submitted with leave of court an amicus brief regarding the issuance of a preliminary injunction, and the court invites the PHRC to continue to participate in future proceedings as an amicus.

A determination of the issue of adequacy of representation must necessarily focus upon "a comparison of the interests asserted by the applicant for intervention and the existing party". *United States v. IBM*, 62 F.R.D. 530, 535 (1974); *Pierson v. United States*, 71 F.R.D. 75, 78 (1976). Other than the PHRC's concern in having any desegregation plan comply with its strict guidelines as to sufficiency of racial balance, the issue not before this court, the interests of the PHRC and the Board in defending the legality of the means—busing—used to achieve racial mixing are congruent (whether under the Amended Plan or a more stringent plan as advocated by the PHRC).

The strength of the Board's interest has been shown not only by its legal defense of the means used to achieve racial balance (i. e. busing, magnet schools), but has been demonstrated more dramatically by its transformation of school facilities and personnel in order to effectuate the use of these means; a process which the Board has argued could not be reversed without huge cost and effort.[6]

Although adversarial in other contexts, the interests of the PHRC and the Board are identical in defending this instant case.[7] Since there has been no collusion, no neglect, bad faith, malfeasance or other incompetence on the part of the existing parties, and no indication of a possibility of such conduct, the applicants' interest will be deemed adequately represented. *Hatton v. County Board of Education*, 422 F.2d 457, C.A. 6, 1970; *Edmondson v. Nebraska*, 383 F.2d 123, *Pierson v. United States, supra*, 71

---

6. See 497 F.Supp. at page 475–476.

7. When the first two intervention requirements are met, a different standard in analyzing adequacy of representation has been used. *Holmes v. Government of Virgin Islands*, 61 F.R.D. 3, 4 (1973).

F.R.D. at 80; *Peterson v. United States*, 41 F.R.D. 131 (1966).

## TIMELINESS

If it were a matter for public concern the PHRC would aid in bringing about a benefit to the public, it would make no difference if it was brought in as a defendant intervenor or not, but there seems to be no better benefit that would result from this except to cause aggravation to all the parties in providing for another defendant, and a series of additional pleadings which may result by reason of a new defendant being entered and more so by complicating discovery. That is time consuming and this case should not be delayed any longer than possible resulting in prejudice to the public.

In *NAACP v. New York*, 413 U.S. 345, 365–366, 93 S.Ct. 2591, 2602–2603, 37 L.Ed.2d 648 (1973), the Supreme Court stated that:

> "Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rules 24(a) and 24(b), that the application must be 'timely'. If it is untimely, intervention must be denied. Thus the Court where the action is pending must first be satisfied as to timeliness. (citing cases) Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances. And it is to be determined by the Court in the exercise of its sound discretion, unless that discretion is abused, the courts ruling will not be disturbed on review."

In the foregoing case the District Court's denial of the motion to intervene was affirmed as that litigation had reached a "critical stage" and the appellants had knowledge of the suit from the very beginning.

In the instant case, although the PHRC had knowledge of this action from its inception, and filed an amicus brief regarding the preliminary injunction, it chose not to move to intervene until a considerable period of time had elapsed after the hearing on the preliminary injunction and the motion for summary judgment. To allow intervention would significantly prolong the determination of this case, particularly by discovery and potential motions and arguments—the worth of which has not been demonstrated by the PHRC.

In *Stallworth v. Monsanto*, 558 F.2d 257, 264–266, C.A. 5, 1977, the Court outlined four factors that should be considered in passing on the timeliness of a petition for leave to intervene. The four factors are: the length of time during which the would-be intervenor knew of his interest in the case before he petitioned to intervene; the prejudice to the existing parties from the would-be intervenor's delay; the prejudice to the would-be intervenor if intervention is denied; and the existence of unusual circumstances.

In applying these factors, the PHRC had actual knowledge of this suit on or before the filing date, and yet did not act promptly in making this application. There would be prejudice to both the Board and the public no matter which side eventually prevails on the merits, as a result of any delay in resolution should the PHRC be allowed to intervene. The Board's uncertainty as to the implementation of its desegregation plan directly increases with delay, and it becomes more difficult to return plaintiffs to the status quo (should that be mandated) as time progresses. Finally, no extraordinary or unusual circumstances justifying late intrusion into the suit have been averred by the PHRC.

While a liberal treatment has been accorded applications for intervention of right as opposed to applications for permissive intervention, *Diaz v. Southern Drilling Corp., supra,* in the instant case even with this liberal view, based on all of the previously enumerated circumstances, I find the application of the PHRC to be untimely when filed.

## CONCLUSION

Intervention of right should be denied for failure to satisfy one of the four necessary

conditions: interest, impairment of that interest, inadequate representation, and timely application. The PHRC has failed to satisfy all of the above required conditions. Therefore the motion to intervene as a matter of right is denied. Nevertheless, the PHRC and any other interested party is invited to participate as amicus curiae, and any memoranda received from such sources will be given the consideration which it merits. The parties are directed forthwith to process this case within the court's threshold in order that a speedy determination may be made.

ORDER OF COURT

AND NOW, TO–WIT, this 29th day of May 1981, for the reasons set forth in the foregoing Opinion, the motion of the Pennsylvania Human Relations Commission to intervene as a party defendant is hereby denied.