**MOTHERSILL D.I.S.C., CORP. et al**

v.

**PETROLEOS MEXICANOS, S.A., et al.**

**Civ. A. No. B–83–808–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 18, 1986.

Merrill Shields, Dula, Shielda & Egbert, Houston, Tex., for intervenor Ancora Shipping, N.V., defendant Verdana Shipping, N.V. and defendant and cross-plaintiff Denimar Shipping, N.V.

Joel Grossman, Waldman, Smallwood & Grossman, Beaumont, Tex., for intervenor, Abe Ashcanase.

## MEMORANDUM OPINION

JOE J. FISHER, District Judge.

This matter came before the Court on a motion to intervene by Abe S. Ashcanase (which we granted) and on a joint motion to dismiss the intervention by Intervenor Ancora Shipping, N.V., Defendant Verdana Shipping, N.V. and Defendant and Cross-Plaintiff Denimar Shipping, N.V. (which we denied). A trial on the merits was thereafter conducted. After a careful scrutiny of the pleadings and evidence at trial, we find that Ashcanase is entitled to $113,-000.00 from Ancora, Denimar and Verdana.

The propriety of the intervention depended in large part upon the real corporate relationship between Ancora and Armilla International, B.V., a non-party to this suit.[1]

Armilla and Ancora are Netherland Antilles corporations. Ashcanase was an employee of Armilla's Washington, D.C. office until 1982, at which time he resigned. Gabriel Rybier, an ubiquitous figure in this schematic, is the founder and financier of Armilla.

Ancora contracted with Pemex to construct an elaborate marine transportation system (known as the L.A.B. System) in Mexico.[2] Armilla served as Ancora's general agent. Ancora contracted out various tasks to, *inter alia*, Denimar and Verdana.[3] An undivided sum was paid by Pemex to Ancora, Verdana, and Denimar in settlement of the main claim. A portion of those proceeds, pursuant to an order by this Court, is being held by the parties pending the outcome of this litigation.

Ashcanase alleged that, *sub regno* Rybier, Denimar, Verdana, and Armilla constituted a collaboratively organized and financed group of companies operating under the exclusive control of Ancora. The motivating reason for the association, according to Ashcanase, was to initiate and effectuate the Pemex project. Ashcanase also alleged that Rybier contractually committed Armilla to pay him $150,000.00 in connection with the Pemex transaction.

Ashcanase premised his motion to intervene and his crucial argumentation at trial upon (1) the contract with Armilla and (2) the allegation that Ancora, as the alter ego of Armilla, is liable for the $113,000.00 remaining on the contractual debt (Rybier paid Ashcanase $37,000.00 on the contract).

Relying upon *Fed.R.Civ.P. 8(a)(1)*, Ancora argued that this Court lacked jurisdiction to hear the intervention because Ashcanase failed to make a jurisdictional statement in his original motion to intervene. However, in his memorandum in support of the motion, Ashcanase specifically requested to intervene by right, pursuant to *Fed. R.Civ.P. 24(a)(2)*. Guided by the maxim that pleadings are to be liberally construed to accomplish substantial justice, Ashcanase's motion and memorandum were read as a single request for mandatory intervention. See *Fed.R.Civ.P. 8(f)*.

Where a petitioner is entitled to compulsory intervention, the court is immediately endowed with ancillary jurisdiction. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 375, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978).[4] Under Rule 8(a)(1) a jurisdictional basis for a claim need not be pleaded where the court pre-possesses jurisdiction (e.g. ancillarily) over the supplemental claim. See 5 C. Wright & A. Miller Federal Practice and Procedure § 1207, p. 82 (1969).

---

1. Ancora is therefore the critical party in opposition and the one to which we usually make reference.

2. Pemex is the governmental agency in Mexico charged with the exploration and development of that country's hydrocarbon resources.

3. Ancora, Verdana and Denimar have the same corporate address in the Netherland Antilles and are different aspects of the same entity.

4. The conceptual justification for ancillary jurisdiction is that the claim "bears a logical relationship to the aggregate core of operative facts which constitutes the main claim over which the court has an independent basis of federal jurisdiction". *Revere Copper and Brass Inc. v. The Aetna and Surety Co.*, 426 F.2d 709, 714 (5th Cir.1970).

Ancora contended that Ashcanase had not raised any claims that would have entitled him to mandatory intervention. Ancora argued that Ashcanase's contract claims were separate and distinct from the factual nucleus of this case and should have been asserted in a separate suit against Armilla.

■ The prerequisites for intervention by right under Rule 24(a)(2) are (1) a timely application; (2) an interest in the property or transaction that is at issue in the main claim; (3) a showing that one is so situated that the disposition of the action may as a practical matter impair or impede one's ability to protect one's interest; and (4) a showing that the existing parties cannot or will not adequately represent one's interests.[5] *See Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir.1970), *cert denied*, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970).

■ For the reasons set out below, we hold that Ashcanase possessed a competent intervention by right claim, which negated the requirement of a jurisdictional statement.[6] Moreover, the amount requested in intervention was shown at trial to be supported by the facts.

(A) *Interest in Property or Transaction*

Ashcanase possessed a direct pecuniary interest in the Pemex settlement funds. The oral contract entered into by him and Rybier specifically obligated Armilla to compensate Ashcanase for his work in connection with the Pemex project.[7] Equally important, that debt was directly traceable to Ancora through Armilla.

(i) *Alter Ego Relationship*

Even a scrupulous observance of corporate formalities (absent here) will not dissuade a court from piercing the corporate veil and requiring a parent to answer for the debts of its subsidiary where the court finds that there has been a confluence of normally independent corporate activities resulting in the complete domination of the subsidiary by the parent. See *Sabine Towing & Transportation Co. v. Merit Ventures, Inc.*, 575 F.Supp. 1442, 1446 (E.D. Tex.1983).[8] A court will be especially diligent in piercing the corporate veil where the failure to do so will result in "manifest injustice to third parties". Id. at 1446.

Excerpts from business letters written by Rybier to Ashcanase elucidated the intimate relationship between Ancora and Armilla.[9] In one letter, regarding the filing of a tariff with the United States Federal Maritime Commission, Rybier wrote that "we will be doing business in the States under Ancora Shipping". In another letter, Rybier wrote: "The fact that we have managed to secure some business for *our Principals* (Ancora) does not mean that *the organization* is able to recover from all the problems which arose due to the L.A.B. System". (Emphasis added). Rybier explained that " ... now that all the account-

5. More generally, the intervenor must demonstrate a "direct, substantial, legally protectable interest in the proceedings." *Hobson v. Hansen*, 44 F.R.D. 18, 24 (1968). See also *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542–43, 27 L.Ed.2d 580 (1970) (Rule 24(a)(2) construed to mean a "significantly protectable interest").

6. Ancora also raised a standing objection. Ashcanase has equal standing with the other parties because a petitioner by right "is treated as if he were an original party and has equal standing with the original parties". *Brown v. Demco, Inc. v. Employer's Casualty Co.*, 792 F.2d 478 (5th Cir.1986).

7. The past performance of services is deemed to constitute sufficient consideration to support a subsequent contract to pay reasonable remuneration for such services. *Gamer Paper Co. v. Tuscany*, 264 S.W. 132 (Tex.Civ.App.-San Antonio 1924, writ dism'd.).

8. A non-exclusive list of major alter ego factors would contain the following: (1) a tendency by the parent to treat the subordinate as a division of the parent; (2) inadequate investment in the subsidiary by the parent; (3) the evasion of contractual commitments incurred by the subsidiary; (4) the symbiotic association of operational and financial activities. See *Sabine Towing*, 575 F.Supp. at 1446–48.

9. These excerpts, by no means exhaustive, are representative of numerous passages in business letters and telexes that denote the throughgoing sameness of Ancora and Armilla.

ing has been done ..." it will take some time before things got "back to normal." And again that "Whilst the above (delayed payments to Ashcanase) may not seem satisfactory, this unfortunately is the hard reality, *especially taking into account that throughout the existence of Armilla and our Principals, Ancora Shipping, N.V. Curacao, as carrier for the group,* the L.A.B. System is the first project, which incurred a major loss, for which of course neither you or we are responsible". (Emphasis added).[10]

Taken alone, these statements are incomplete and ambiguous. But an integrative analyses of the statements showed that the lines of demarcation between Ancora and Armilla were purely fictitious. Ancora and Armilla existed coterminously. They were united around a single business venture. As a consequence of the L.A.B. System's failure, both experienced financial paralysis. The transformation of Armilla into Ancora for the purpose of operating within the United States existentially implied that Ancora and Armilla were identical. The juxtaposition of the phrases "our Principals" and "the organization" indicated that Rybier conceived of the two entities as consubstantial and mutually operational by reason of the same economic base. The reference to the "accounting work" gave further credence to the conclusion that Armilla and Ancora were economically interconnected. The predication of payment to Ashcanase solely upon the financial integrity of both Ancora and Armilla recapitulated the corporate identity theme.

Ashcanase received four payments from Rybier that were charged to Ancora. These payments constituted the $37,000.00 that Rybier already paid Ashcanase. These payments not only demonstrated the

cozy connections between Ancora and Armilla but proved that Ancora had been indebted to Ashcanase.

Rybier's epistolary revelations and the fact that he paid Ashcanase with funds drawn on Ancora left no doubt that Armilla and Ancora were corporately symmetrical and, indeed, that Armilla was a mere puppet of Ancora.

### (ii) *Contractual Indebtedness*

There was no question that a contractual debt existed between Rybier and Ashcanase. Rybier wrote to Ashcanase, in a letter dated March 19, 1984, that

It is not a question of irregular or partial payments, but it is simply a question of being able to overlook what income can be generated in the next 6–9 months and at the same time, to be sure that such income would definitely be available and based on this, *to set aside certain funds, on which you are priority number one.* This has simply not been possible until now.

The only (sic) I can do at this moment, is to keep you up-dated in intervals of about 2 months of how progress is being made, since as you well know, things can change dramatically once there is an upswing *and then there should be sufficient funds to ensure the commencement of the payment of the amounts which are due you.* (Emphasis added).

Therefore, as late as March 1984 Rybier had confirmed in writing the existence of a contractual debt to Ashcanase.[11]

■ Ancora argued that because Ashcanase's 1982 contract with Armilla was oral, it was time-barred under the Texas two-year statute of limitations for oral contracts. *Vernon's Ann.Civ.St.art. 5526* (re-

---

**10.** Donald McNab, one of the directors of Armilla's London office, testified in deposition that "by and large" the directors of Ancora and Armilla were identical, although the "mix" (i.e., where they presided at any one time) was not always the same. McNab stated that, in any event, Rybier was the common denominator in Ancora and Armilla, and that the same held true for Denimar and Verdana.

**11.** McNab testified that there was never a question of Ashcanase having a claim on Armilla. According to McNab, there was a 1982 financial meeting at the Hague at which it was decided that $150,000.00 would be paid to Ashcanase for his work on the Pemex project. Mr. K.H. Cho, a director at the Seoul, Korea office of Armilla, was also present at the meeting and confirmed that such an agreement had been reached between Ashcanase and Rybier.

pealed 1985). However, where a debtor acknowledges in a signed writing the existence of a debt, the applicable limitation period in Texas is four years. *U.T.C.A., Civil Practice & Remedies Code § 16.004.* See *City of Houston v. Moody*, 572 S.W.2d 13 (Tex.Civ.App.-Houston 1978, ref.n.r.e.).

Rybier's signed acknowledgment of the debt to Ashcanase brought the contract under the control of the four-year statute of limitations. Accordingly, Ashcanase's claim was not untimely.

### (B) *Dispositional Consequences*

The determination whether or not the disposition of this action without Ashcanase would impair or impede his ability to protect his interest rested upon a consideration of practical realities rather than legal formalities. See *Atlantis Development Corporation v. United States*, 379 F.2d 818, 826 (5th Cir.1967).

Ancora is in a precarious financial position. Rybier, probably as a consequence of that predicament, has adopted a recalcitrant posture vis-a-vis Ashcanase. Allowing the settlement proceeds to be transported overseas to Ancora would effectively preclude Ashcanase from reaching those funds. Therefore, though technically unimpaired, Ashcanase's claims would have been practically and factually worthless if his motion to intervene was denied.

### (C) *Representational Posture of the Existing Parties*

None of the other parties to this suit were legally disposed to articulate the appropriate legal arguments on Ashcanase's behalf. Each one had an interest(s) competitive with or oblivious to Ashcanase's. See *Diaz*, 427 F.2d at 1125. Therefore, Ashcanase could not be denied intervention based upon adequate surrogate representation.

### (D) *Timeliness*

Because a final judgment had been entered at the time Ashcanase filed his motion, Ancora argued that the motion was untimely. The Fifth Circuit has stated, in a post-judgment-intervention-by-right decision, that " 'Timeliness' is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accomodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interests of justice".[12] *Mc-Donald v. D.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir.1970). Hence, the mere fact that Ashcanase filed a post-judgment motion did not *ipso facto* render that motion untimely. Rather, Ancora had to prove that the tardy intervention caused it prejudice.

Ashcanase's claims fell squarely within the four corners of the main litigation. Ashcanase's services were apparently secured by Rybier only to facilitate business intercourse with the officials of the Mexican government. In all but a formalistic sense, Ashcanase was as much an independent operative in this business venture as were any of the corporate parties. Therefore, Ashcanase's claims could not have come as a surprise to Ancora; nor could the defense of the claims exact more than a modicum of litigational energy. (In fact, the trial on the merits took less than three hours). None of Ashcanase's claims necessitated the relitigation of pre-judgment issues; nor were any of the other parties effected by the trial's outcome. The funds to which Ashcanase looked to satisfy his claim were already within the control of the court.

Ashcanase's tardy intervention did not cause the kind of detriment that would necessitate its denial.

In summation, there is no jurisdictional bar to the court hearing Ashcanase's claim in intervention. We find that Rybier, on behalf of Armilla, entered into a contract with Ashcanase; that the contract contemplated the payment of $150,000.00 to Ashcanase for his work on the Pemex project; that a debt of $113,000.00 is outstanding on

---

**12.** When a petitioner is entitled to intervene by right, courts should be reluctant to dismiss one's petition as untimely, even though a denial would be appropriate in the case where one is entitled to intervene by permission only. See *Diaz*, 427 F.2d at 1126.

that contract; and that Ancora is liable for that debt as the alter ego of Armilla.